IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| BRIAN TOOTLE, | : | | |
| | Plaintiff | : | No. 1:20-CV-0235 |
| | | : | |
| v. | | : | Judge Lanzillo |
| | | : | |
| CORRECTIONAL OFFICER LONG, | : | Electronically Filed Document |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT</u>**

### I.   <u>STATEMENT OF THE CASE</u>

Plaintiff brings this action, *pro se*, for alleged "unlawful confiscation and prohibition of his religious literature." (ECF 14, ¶ 1). On May 11, 2019, Plaintiff was escorted to the Restricted Housing Unit ("RHU") at SCI-Forest. (ECF 14, ¶ 7). "Prior to being escorted to the RHU, Plaintiff…packed…his religious literature, his Noble Qur'an and two Mushaf's (the all Arabic Qur'an), accompanied by multiple other religious books." (ECF 14, ¶ 8).

It is unclear precisely what Plaintiff alleges happened next. Plaintiff admits that he did not sign a DG-153 form "because Long refused to give him religious literature," which Plaintiff already stated consisted of at least five books: three Qur'ans (one English, two Arabic) and "multiple" more religious texts.  (ECF 14, ¶¶ 8-9). Plaintiff vaguely claims that he "requested his religious material" (consisting of at least five books based on his pleadings), "but he was denied." (ECF 14, ¶ 11). "Plaintiff further avers that…refusal to give him his religious literature placed a substantial burden on his religious exercise." (ECF 14, ¶ 13).

Plaintiff does not give a specific time period that he was allegedly deprived of his multiple Qur'ans nor does he allege that he was unable to fast, pray, or recite Surahs at any point. And although he mentions a general policy that "inmates are permitted to possess one religious book while in RHU custody," none of his averments make clear whether he is contesting a) DOC

policy, b) the application of DOC policy, or c) the denial of his "literature" in toto. (ECF 14, ¶ 10).

So, for the reasons stated herein, all claims against Defendant Long should be dismissed for failure to state a claim upon which relief can be granted.

## II.    STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P 12(b)(6), the Court must "accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of [the plaintiff]," but "need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008); Mazur v. Milo's Kitchen, LLC, 2013 WL 3245203 (W.D. Pa. 2013) (citing California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). The plaintiff must "nudge [his or her] claim across the line from conceivable to plausible" in order to survive a motion to dismiss. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557, 570 (2007) (rejecting the "no set of facts" standard") and Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (finding that a complaint must do more than allege the plaintiff's entitlement to relief but rather 'show' such an entitlement via its facts).

This plausibility requirement means that the complaint must provide enough factual matter to suggest the required element of the claim; in other words, it calls for "enough facts to state a claim to relief that is plausible on its face." Barber v. Pennsylvania State Police, 2007 WL 2071896, *2 (W.D. Pa. 2007) (citing Twombly, 550 U.S. at 1974). The Court need not accept legal conclusions or inferences drawn by plaintiff if unsupported by the facts set forth in the complaint. Barber, 2007 WL 2071896, at *2 (citing California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d at 143 and Twombly, 550 U.S. at 1965).

The United States Supreme Court has made it clear that the Twombly standard applies to §1983 claims. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Expanding on its decision in Twombly, the Supreme Court stated:

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.... where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.' Fed. R.Civ. P. 8(a)(2).

Iqbal, 556 U.S., at 678-79. See also Singer v. Heckler, 2015 WL 8992438, *5 (W.D. Pa. 2015).

Finally, *pro se* pleadings are construed more liberally than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-521 (1972). Notwithstanding this liberality, *pro se* pleaders are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### III.  ARGUMENT

#### A. PLAINTIFF FAILS TO STATE A FIRST AMENDMENT CLAIM

Simply, Plaintiff has not alleged sufficient facts to support a cognizable claim under the First Amendment. In order for the First Amendment's free exercise clause to be implicated, two threshold requirements must first be met. First, the belief must be sincerely held, and second, it must be religious in nature. DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). The allegations in Plaintiff's Complaint appear to fulfill both of those threshold requirements.

However, a "regulation is valid if it is reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Williams v. Morton, 343 F.3d 212, 216 (3d Cir. 2003). "This approach ensures the ability of corrections officials to anticipate

3

security issues and adopt innovative solutions to the intractable problems of prison administration and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to resolution by decree." O'Lone, 482 U.S. at 349-50. Importantly, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams, 343 F.3d at 217.

Although Defendant Long concedes that Plaintiff's belief may be sincerely held, Plaintiff's right to free exercise has not been impinged. The analysis turns to the four-factor test in O'Lone (set forth in Turner v. Safley, 482 U.S. 78, 89 (1987)) to determine whether any restriction was unconstitutional. This four-factor test requires courts to consider: 1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; 2) whether alternative means exist for inmates to exercise the constitutional right at issue; 3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and 4) whether obvious, easy alternatives exist. DeHart v. Horn, 390 F.3d 262, 268 (3d Cir. 2004); Sharp v. Johnson, 669 F.3d 144 (3d Cir. 2012).

The first factor is foremost, but it does not subsume the rest of the inquiry. Sutton v. Rasheed, 323 F.3d 236, 253 (3d Cir. 2003). For the second factor, the court must consider whether the inmate has "alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice." Sutton, 323 F.3d at 255, quoting DeHart, 227 F.3d at 55. "[W]here other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." DeHart, 227 F.3d at 53 (quoting Turner, 482 U.S. at 90). The third and fourth factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources." DeHart, 227 F.3d at 57.

4

In the instant case, Plaintiff does not allege facts with enough specificity to determine how and when Plaintiff was denied his literature (consisting of at least five books). But even assuming that Plaintiff had, the four factor test weighs in favor of Defendant Long. Restrictions on property in RHU are reasonable, they do not prevent inmates from practicing their religion, they are essential to the disciplinary function of RHU, and no obvious alternatives exist. As such, Plaintiff's First Amendment claim must be dismissed.

### B. PLAINTIFF FAILS TO STATE A CLAIM UNDER RLUIPA

Plaintiff also asserts that his rights were violated under RLUIPA. This claim too should be dismissed. First, RLUIPA does not permit actions against government employees in their individual capacities. Sharp v. Johnson, 669 F.3d 144, 153-55 (3d Cir. 2012). In this case, Plaintiff is unequivocally suing Defendant Long in his individual capacity. (ECF 14, ¶ 6). For that reason alone, Plaintiff's RLUIPA claim fails. Furthermore, RLUIPA does not allow for the recovery of monetary damages, only injunctive and declaratory relief, against a defendant in his official capacity. Small v. Wetzel, 528 Fed.Appx. 202, 208 (3d Cir. 2013) at *4.

Section 3 of the RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person 1) is in furtherance of a compelling governmental interest and 2) is the least restrictive means of furthering that compelling governmental interest." Holt v. Hobbs, 135 S.Ct. 853, 860 (2015), quoting 42 U.S.C.§2000cc-1a.

There are four factors to consider in a RLUIPA claim. First, the requested accommodation must be based on the inmate's sincere religious belief. Holt, 135 S.Ct. at 862-63. Plaintiff's religious belief appears to be sincere. Second, the governmental policy must substantially burden the inmate's exercise of his religion. Id. For the purposes of RLUIPA, a

substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007). In Holt, the Supreme Court held that there was a substantial burden where the inmate had to, pursuant to policy, "engage in conduct that seriously violates his religious beliefs" or face "serious disciplinary action." Id. at 862. The burden is on the inmate to prove that he faced a substantial burden. Id. at 863.

  Here, there is no substantial burden. But if the court should conclude otherwise, the third determination is whether there is a compelling governmental interest, which must be a focused inquiry that applies the restriction to the particular claimant. Holt at 863. However, this inquiry must be undertaken in light of the importance of order, security, and the granting of deference to prison administrators, with "particular sensitivity" to security concerns. RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." Washington, 497 F.3d at 283 (citing Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)). In this case, there is a compelling governmental interest in putting certain limitations on books in RHU in order to maintain safety, security, and organization. Plaintiff's own pleadings illustrate how custody requirements, especially disciplinary custody, may involve frequently moving cells. Additionally, in terms of fire hazards and contraband, officers would have unlimited property to search through if there were no limits.

  Fourth, the restriction must be the least restrictive means of furthering the compelling governmental interest. Holt at 863-64. The least restrictive means test requires the government to "show that it lacks other means of achieving its desired goal without imposing a substantial

burden on the exercise of religion by the objecting party." Id. at 864. In the instant case, there is no other means to achieve the desired goal than to put a limit on the amount of property an inmate can access while in RHU.

Additionally, when considering all of the above factors, the court should bear in mind the unique challenges faced by prison administrators.

> We emphasize that although RLUIPA provides substantial protection for the religious exercise of institutionalized persons, it also affords prison officials ample ability to maintain security. We highlight three ways in which this is so. First, in applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting. Second, if an institution suspects that an inmate is using religious activity to cloak illicit conduct, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." Cutter v. Wilkinson, 544 U.S. 709, 725, n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). See also Hobby Lobby, 573 U.S., at ——, n. 28, 134 S.Ct., at 2774, n. 28. Third, even if a claimant's religious belief is sincere, an institution might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests.

Id. at 866-67. Simply put, the unique challenges of prison officials require some limitations on inmate property, even access to multiple volumes of religious literature.

Defendant Long cannot be sued in his individual capacity under RLUIPA and so this claim must be dismissed. Additionally, analysis under Holt reveals that Plaintiff does not have a valid RLUIPA claim.

## IV.   CONCLUSION

Plaintiff has not alleged facts with enough specificity to state a cognizable claim under the First Amendment. And, under any variation of facts he may be alleging, neither DOC policy nor Defendant Long has violated his constitutional rights to the free exercise of his Islamic faith. Plaintiff is not entitled to any relief under RLUIPA either. Therefore, Defendant Long

respectfully requests that this motion be granted in its entirety and that all claims be dismissed with prejudice as amendment would be futile.

                                            Respectfully submitted,

                                            JOSH SHAPIRO
                                            Attorney General

|  |  |
|---|---|
|  | */s/ Justin Gayle* |
| Office of Attorney General | JUSTIN GAYLE |
| Litigation Section | Deputy Attorney General |
| 1521 Waterfront Place | Attorney I.D. No. 327119 |
| Mezzanine Level |  |
| Pittsburgh, PA 15222 |  |

December 28, 2020

## **CERTIFICATE OF SERVICE**

      I, Justin Gayle, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on December 28, 2020, I caused to be served a true and correct copy of the foregoing document titled *Brief in Support of Motion to Dismiss* to the Plaintiff via hand delivery through the Department of Corrections.  This alternative method of service is being used due to the COVID-19 emergency.

**Brian Tootle, LS1066**
**SCI-Forest**
*Pro Se Plaintiff*

                                                      By: */s/ Justin Gayle*
                                                                JUSTIN GAYLE
                                                                Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Date:  December 28, 2020