IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN TOOTLE,                                    :
                                     Plaintiff   :   No.  1:20-cv-0235
                                                 :
            v.                                   :   Judge Baxter
                                                 :   Magistrate Judge Lanzillo
CORRECTIONAL OFFICER LONG,                       :
                                                 :   Electronically Filed Document
                                     Defendant.  :

**DEFENDANT'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**I.      STATEMENT OF THE CASE**

Plaintiff, Brian Tootle, initiated this lawsuit by filing a Motion for Leave to Proceed *in forma pauperis* on August 13, 2020. (ECF 1). Plaintiff's Complaint was ultimately docketed September 29, 2020. (ECF 14). Plaintiff's Complaint alleges Defendant Long violated his right to freely exercise his religion when Defendant Long confiscated his religious materials and denied him access to those texts during his incarceration in the RHU. (ECF 14). Plaintiff alleges Defendant Long violated his rights under the Free Exercise Clause of the First Amendment and his rights protected by RLUIPA. (ECF 14). Defendant Long filed a Motion to Dismiss Plaintiff's claims on December 28, 2020. (ECF 21, 22). This Court issued a Report and Recommendation on July 19, 2021, granting in part and denying in part Defendant's Motion. (ECF 26). Therein, this Court dismissed Plaintiff's RLUIPA claim. (*See* ECF 26). On August 13, 2021, the Report and Recommendation was adopted as the Opinion of the Court. (ECF 27). Consequently, Plaintiff's only claim remaining is an alleged violation of Plaintiff's Free Exercise of Religion under the First

Amendment. (*See* ECF 26, 27). Defendant Long now moves for summary judgment on the sole remaining claim.[1]

## II.    STANDARD OF REVIEW

In ruling on a motion for summary judgment, a threshold inquiry is conducted on the need for a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  Federal Rules of Civil Procedure 56(c).  See also, Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

The moving party bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.  See Anderson, 477 U.S. at 248.  Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicion.  See Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982).  There is no issue for trial unless evidence in the record would permit a jury to return a verdict for the non-moving party.  See Anderson, 477 U.S. at 248.  In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. See Pollack v. AT&T, 794 F.2d 860, 864 (3d Cir. 1986).

---

[1] Defendant Long has prepared a Statement of Material Facts Not in Dispute ("SMF") and an Appendix of Exhibits ("SMF Exhibits") thereto, which set forth the facts of this case in significant detail. Thus, no further exposition of the facts will be included herein, except as needed in the development of the legal issues below.

To apply the summary judgment test, the elements of a plaintiff's *prima facie* case under the substantive law are considered. See Anderson, 477 U.S. at 248. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation, 477 U.S. at 322.

### III.    MATERIAL FACTS NOT IN DISPUTE

The undisputed material facts in support of Defendant's Motion for Summary Judgment are set forth in Defendants' Concise Statement of Material Facts, which is being filed contemporaneously with this Motion per Local Rule 56.

### IV.    ARGUMENT

### A. Plaintiff's Claims are Barred under the PLRA for Failure to Exhaust

In his Complaint, Plaintiff alleges that Defendant Long confiscated his religious materials while he was incarcerated in the RHU in violation of the Free Exercise Clause of the First Amendment. Plaintiff filed one grievance related to this conduct, which primarily alleged retaliation against one individual: Sgt. Barger. Under Section B of his grievance, Plaintiff lists numerous staff from SCI-Forest that Plaintiff spoke to regarding the allegations.[2] While Plaintiff includes Defendant Long in this list, Plaintiff fails to implicate or state Defendant Long's connection to the alleged conduct in his grievance. Further, Defendant Long is not named in any subsequent grievance responses or appeals. The word Quran does not even appear in the grievance. And finally, Plaintiff submitted the grievance after he exited disciplinary custody. As such, Plaintiff did not put Defendant Long on notice that he was asserting a claim for violation of

_____

[2] This section of the grievance form specifically states: "List actions taken and staff you have contacted, before submitting this grievance." See Exhibit B.

religious freedom such that his grievance could be remedied. For these reasons, Plaintiff has procedurally defaulted on any claim against Defendant Long. Therefore, summary judgment is entirely appropriate for Defendant Long.

Exhaustion is an affirmative defense. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Defendant Long avers that the instant action is barred for Plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). An affirmative defense is proven if, after considering all evidence in the case, the Defendant has succeeded in proving that the required facts are more likely so than not so. See Third Circuit Model Civil Jury Table of Contents and Instructions 1.10. Exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d 265 (3d Cir. 2013)("Exhaustion is a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.')(quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010)). See also Hensley v. Trempus, 2019 WL 2412490 *1, report and recommendation adopted, 2019 WL 2410803 (W.D. Pa. 2019); Breeland v. Fisher, 2013 WL 5935046, *4 (M.D. Pa. 2013).

The Prison Litigation Reform Act provides, in pertinent part, as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Application of this section is mandatory. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion, for these purposes, requires "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81 (2006).

In order to properly exhaust, prisoners must complete the administrative review process in accordance with the applicable procedural rules of the prison grievance process. Jones v. Bock,

549 U.S.  199 (2007).  Prison grievance procedures supply the yardstick for measuring procedural

default.  Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  Unexhausted claims may not be considered

by the courts.  Jones v. Bock, *supra*.  Courts are reluctant to invoke equitable reasons to excuse

failure to exhaust as the statute requires.  Davis v. Warman, 49 F.App'x 365 (3d Cir. 2002).  "[I]t

is beyond the power of the court to excuse compliance with the exhaustion requirement."  Nyhuis

v. Reno, 204 F.3d at 73.

The Pennsylvania Department of Corrections has implemented an Inmate Grievance

Process, which is set forth in DC-ADM 804 (Inmate Grievance System).  See 37 Pa. Code § 93.

9; see also Lawson v. Barger, 2019 WL 2085813, *3, report and recommendation adopted, 2019

WL 2085449 (W.D.Pa. 2019)("The grievance system utilized in Pennsylvania's prison system

requires inmates to satisfy a three-step grievance and appeals process")(citing DC ADM-804).

The DC-ADM 804 mandates that an inmate must complete three steps in the grievance

process in order to properly exhaust administrative remedies: 1) filing an Initial Inmate Grievance;

2) filing an Appeal to the Facility Manager; and 3) Filing an Appeal to the Secretary's Office of

Inmate Grievances and Appeals.  See SMF ¶¶ 20-22. Failure to fully exhaust under ADM-804 is

fatal to an inmate Plaintiff's case.  See Jackson v. Carter, 2019 WL 342685, *4 (W.D.Pa. 2019);

Wakeley v. Giroux, 2014 WL 1515681, *12-*19 (M.D.Pa. 2014).  Cf. Sinkler v. Clark, 2019 WL

6328031, *3 (M.D.Pa. 2019)("Courts have concluded that inmates who fail to fully, or timely,

complete the prison grievance process are barred from subsequently litigating claims in federal

court")(citing Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F.App'x 22

(3d Cir. 2008)).

The PLRA itself does not have a "name all defendants" requirement. Byrd v. Shannon, 715

F.3d 117, 127 (3d Cir. 2013) (internal citations omitted). However, for inmates in the custody of

the Pennsylvania DOC, DC-ADM 804 states in part that the inmate "shall identify individuals directly involved in the events." See Green v. Maxa, 2020 WL 1249205 at *5 (W.D. Pa. Mar 16, 2020); Jackson v. Carter, 813 Fed. Appx. 820, 823 (3d Cir. 2020). The Third Circuit has held, "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitutes a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pa. Dep't of Corr., 146 Fed. Appx. 554, 557 (3d Cir. 2005).

However, this procedural default can be excused if prison administrators respond to the grievance "by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004). Applying Spruill, the Third Circuit has found prison officials to have excused an identification default when their grievance responses acknowledge involvement of the defendants. See Williams v. Beard, 482 F.3d 637, 639-40 (3d Cir. 2007); Robinson v. Johnson, 343 Fed. Appx. 778, 782 (3d Cir. 2009); Tenon v. Dreibelis, 606 Fed. Appx. 681, 687 n. 5 (3d Cir. 2015). This is because, "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Williams v. Beard, 482 F.3d at 640 (internal citation omitted). But where the inmate does not identify a defendant in the grievance and there is no indication in the record that prison administrators knew that the defendant was involved in the conduct challenged in the grievance, the prisoner has failed to exhaust administrative remedies. Byrd, 715 F.3d at 127; Johnson v. Townsend, 314 Fed. Appx. 436, 442-43 (3d Cir. 2008).

Here, Plaintiff filed Inmate Grievance No. 804559 related to a misconduct he received on May 11, 2019. Specifically, Plaintiff framed Grievance No. 804559 primarily in terms of alleged retaliation. Plaintiff states[3]:

---

[3] Minor spelling corrections made with no change to substance.

On May 11, 2019, I was escorted to the RHU. Sgt J.Barger lied on me, charging me with Charge #15 & #35. Such assertion resulted in a sanction of dismissal of charge #15 & guilty of charge #35. Which I received 15day RHU time for.

I was released from the RHU on day 13. Such lie from J Barger was in retaliation for the previous grievances I filed against this administration, see (grievance #773226 and #795166). Such retaliation caused me severe pain, misfortune, and traumatized me.

Firstly, I went to the RHU for something I didn't do, & the day before I went I found out my grandmother almost died from Sepcis, while in the RHU I received none of my property except the basics, none of my religious material while this is the month of Ramadan, my appeal got denied also, and I lost my job as Unit Maintenance worker & Activities Trainer.

As a result of such devastating circumstances & retaliatory conduct, I seek the following relief of  Monetary Damages, see page #1 of 2. Thank you for your time and consideration in this matter.

Grievance No. 804559 squarely raises a claim of retaliation for filing prior grievances. But it does not allege involvement of Defendant Long in any of the alleged acts of retaliation. See SMF ¶ 14. Rather, Plaintiff specifically identifies "Sgt Barger" as the individual who committed the alleged retaliatory acts. See SMF ¶ 15. Plaintiff does not identify any other individuals. See SMF ¶ 15. Defendant Long is not identified in any of Plaintiff's appeals, nor is he identified or acknowledged to have been involved in the alleged conduct by the DOC in their responses. See SMF ¶ 16, 17. There is no indication in the grievance record that prison administrators knew that Defendant Long was involved in the alleged conduct. See SMF ¶ 18. It is important to note that Plaintiff was specific in his initial grievance and subsequent appeal in that he intentionally names "Sgt Barger and "Superintendent Oberlander" but Plaintiff fails to implicate Defendant Long in any way. See SMF ¶15.

Additionally, the grievance failed to put prison officials on notice that Plaintiff was raising the First Amendment claim that he needed his Quran in order to practice his religion during Ramadan.  "The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system and claim to claim, but

it is the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion." Jones v. Bock, 549 U.S. 199,219 (2007). DC-ADM 804 states:

> The text of the grievance must be legible, understandable,
> and presented in a courteous manner.  The inmate must
> include a statement of the facts relevant to the claim.
>
> a. The statement of facts shall include the date,
>    approximate time, and location of the event(s) that
>    gave rise to the grievance.
> b. The inmate shall identify individuals directly
>    involved in the event(s).
> c. The inmate shall specifically state any claims he/ she
>    wishes to make concerning violations of Department
>    directives, regulations, court orders, or other law.

DC-ADM 804, § 1(A)(11).  In sum, an inmate's grievance must include facts sufficient to

place prison officials on fair notice of the claim to be investigated. He did not do so here.

In this case, Plaintiff fails the third prong's requirement of specificity. Although Plaintiff

mentions the First Amendment on the first page, the narrative in his grievance was not sufficient

for prison officials to perform an investigation into the claim he now seeks to bring in a lawsuit.

SMF ¶ 26. Plaintiff vaguely mentions "religious material" amidst a list of other circumstances

and never uses the word Quran. See SMF ¶¶ 32. He alleges that he went to the RHU for

something he didn't do, that his grandmother almost died, that his appeal was denied, and that

he lost his job, etc. See SMF ¶¶ 33-25. But by reading that paragraph, it would be impossible

for a prison official to discern that Plaintiff was requesting that he have access to his Quran

while he was in the RHU.

Finally, Plaintiff's grievance is dated May 29, 2019. SMF ¶ 13.  By his own admission, "on May 11, 2019, [he] was escorted to the RHU" and he "was released from the RHU on day 13." SMF ¶ 25. Plaintiff's cell history confirms that Plaintiff was in disciplinary custody from May 11, 2019 to May 24, 2019. SMF ¶ 25. Therefore, Plaintiff filed his grievance five days after he exited disciplinary custody. This Court can take judicial notice that Ramadan in 2019 began on the evening of Sunday, May 5 and ended on the evening of Monday, June 3. SMF ¶ 24. On May 29, 2019, still during the period of Ramadan, Plaintiff did not allege any continuing problems with access to religious materials. The grievance process was available to Plaintiff during this entire period and he in fact filed a response to Misconduct D052920 on May 15, 2019. SMF ¶ 18. By May 29, 2019, the issue was moot. There was no way for officials to be on notice of a potential violation of Plaintiff's free exercise of religion, specifically access to his Quran in the RHU during Ramadan, to be addressed.

For these reasons, Plaintiff has failed to exhaust his administrative remedies and summary judgement in favor of Defendant Long is required.

### B. Long is entitled to summary judgment as a matter of law

Plaintiff's sole remaining claim is for a First Amendment Free Exercise of Religion; however, Plaintiff cannot prevail on this claim. In order for the First Amendment's free exercise clause to be implicated, two threshold requirements must first be met.  First, the belief must be sincerely held, and second it must be religious in nature.  DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).  If there is a prison regulation that impinges on the inmate's constitutional right to free exercise of his religion, "the regulation is valid if it is reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Williams v. Morton, 343 F.3d 212, 216 (3d Cir. 2003).  "This approach ensures the ability of corrections officials to anticipate

security issues and adopt innovative solutions to the intractable problems of prison administration and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to resolution by decree." O'Lone, 482 U.S. at 349-50.   Importantly, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams, 343 F.3d at 217.

As a threshold matter, "only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). In Enoch v. Perry, 2019 WL 2393783, at *6 (W.D. Pa. 2019), the court denied a prisoner's motion for preliminary injunction/temporary restraining order because the plaintiff failed to explain "why he need[ed] such a rug or how it [was] connected to or a required component of his faith," and therefore, the plaintiff failed to "allege facts showing that the use of an in-cell prayer rug was required by his sincerely held religious beliefs." In Enoch, the court recognized that the plaintiff's brief stated that the "denial of requested religious accommodations hinder plaintiffs total ability to practice, or express his religious beliefs which are mandated via the doctrine and ethics of a seeker." Id. Yet, the court determined that this was simply a "bald assertion" that provided the court with no basis from which it could determine whether the plaintiff's belief was sincerely held or even related to his religion. Id.

Moreover, even if this Court determined that Plaintiff did provide enough evidence to support a finding that his requested items are required by his sincerely held religious beliefs, such a limited restriction was not a substantial burden on his rights. See Pressley v. Beard, 266 Fed. App'x 216, 218 (3d Cir. 2008) (finding that the confiscation of an inmates "hard-bound religious materials and prayer rug was intended to further 'legitimate penological objectives") (citing Turner v. Safley, 482 U.S. 78, 87, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987)).

10

If there is a prison regulation that impinges on an inmate's constitutional right to free exercise of his religion and if the belief is sincerely held and religious in nature, the analysis then turns to the four-factor test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987).  The four-factor test requires courts to consider: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist.  DeHart v. Horn, 390 F.3d 262, 268 (3d Cir. 2004); Sharp v. Johnson, 669 F.3d 144 (3d Cir. 2012).

The first factor is foremost, but it does not subsume the rest of the inquiry.  Sutton v. Rasheed, 323 F.3d 236, 253 (3d Cir. 2003).  For the second factor, the court must consider whether the inmate has "alternative means of practicing his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice."  Sutton, 323 F.3d at 255, quoting DeHart, 227 F.3d at 55.  "[W]here other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation."  DeHart, 227 F.3d at 53 (quoting Turner, 482 U.S. at 90). The third and fourth factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources."  DeHart, 227 F.3d at 57.

Temporarily regulating what items and quantity of items inmates may keep in their cells while in disciplinary custody is of critical penological interest. Plaintiff has failed to provide any evidence that Defendant Long substantially burdened Plaintiff's exercise of religion. In that vein, Plaintiff was free to pray during Ramadan and was able to fast during Ramadan as well. Because

11

Plaintiff has not shown that thirteen days in the RHU substantially burdened his freedom to exercise his religion, Defendant Long is entitled to summary judgment on Plaintiff's First Amendment claim.

## V.    CONCLUSION

For the above discussed reasons, Defendant Long respectfully submits that entry of Summary Judgment on his behalf and against the Plaintiff is appropriate as to the remaining claim.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

*s/ Annamarie Truckley*
ANNAMARIE TRUCKLEY
Deputy Attorney General
Attorney I.D. No. 320474

Office of Attorney General
Litigation Section
1521 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Justin A. Gayle, Esq.
Deputy Attorney General
Karen M. Romano
Chief Deputy Attorney General

Date:  May 2, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN TOOTLE,                              :
                              Plaintiff   :   No.  1:20-cv-0235
                                          :
            v.                            :   Judge Baxter
                                          :   Magistrate Judge Lanzillo
CORRECTIONAL OFFICER LONG,                :
                                          :   Electronically Filed Document
                              Defendant.  :

## CERTIFICATE OF SERVICE

I, Annamarie Truckley, Deputy Attorney General for the Commonwealth of Pennsylvania,

Office of Attorney General, hereby certify that on May 2, 2022, I caused to be served a true and

correct copy of the foregoing document titled ***DEFENDANT'S BRIEF IN SUPPORT OF***

***MOTION FOR SUMMARY JUDGMENT*** to the following:

**via U.S. Mail:**

Smart Communications/PA DOC
Brian Tootle, LS-1066
SCI Forest
PO Box 33028
St. Petersburg, FL 33733
*Pro Se Plaintiff*

                              By:    *s/ Annamarie Truckley*
                                     Annamarie Truckley
                                     Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Date: May 2, 2022