IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN TOOTLE,
   Plaintiff   :   No. 1:20-cv-0235

  V.       :   Judge Baxter

         :   Magistrate Judge Lanzillo

CORRECTIONAL OFFICER,
   Defendant :

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR CROSS SUMMARY JUDGEMENT

### I. STATEMENT OF THE CASE

Plaintiff, Brian Tootle, initiated this lawsuit by filing a Motion for Leave to Proceed in forma pauperis on August 13, 2020. (ECF 1). Plaintiff's Complaint was ultimately docketed September 29, 2020. (ECF 14). Plaintiff's Complaint alleges Defendant Long violated his right to freely exercise his religion when Defendant Long confiscated his religious materials and denied him access to these texts during his confinement in the RHU. (ECF 14). Plaintiff alleges Defendant Long violated his rights under the Free Exercise Clause of the First Amendment and his rights protected by RLUIPA. (ECF 14). Defendant Long filed a Motion to Dismiss Plaintiff's claim on December 28, 2020. (ECF 21,22). This Court issued a Report and Recommendation on July 19, 2021, granting in part and denying in part Defendant's Motion. (ECF 26). Therein, this Court dismissed Plaintiff's RLUIPA claim. (See ECF 26). On August 13, 2021, the Report and Recommendation was adopted as the opinion of this Court. See (ECF 27). Consequently, Plaintiff's only claim remaining is his alleged violation of Plaintiff's Free Exercise of Religion under the First Amendment. See (ECF 26, 27). Plaintiff now moves for cross summary judgement on his remaining claim.

## II. STANDARD OF REVIEW

### PRO SE LITIGANTS

In reviewing a pro se plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the pro se plaintiff. See Ericksonv. Pardus, 551 U.S. 89,93, 127 S. Ct. 2197, 167 L. Ed 2d 1081 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 229 (3rd Cir. 2008). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on it's face ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." id at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (internal citations omitted). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp Papasan v. Allain, 478, U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209. (1986). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Finally, a court must employ less stringent standards when considering(2018 U.S. Dist Lexis 3) pro se pleadings than when judging the work product of an attorny. Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed 2d 652 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." Higgins v. Beyer, 283 F.3d 683,

688 (3d Cir. 2002) (internal quotations omitted). See also Nami v. Fauver 82 F. 3d 63, 65 (3d Cir. 1996) ("Since is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Not withstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.

## MOTION FOR SUMMARY JUDGEMENT

Summary judgement shall be granted when there are no genuine issues of **material fact is dispute** and the movant is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a). To withstand summary judgement (2021 U.S. Dist. LEXIS 24) an issue of fact in dispute must be both genuine and material, i,e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. Anderson, 477 U.S. at 248. When considering a summary judgement motion, the court may not weigh the evidence or make credibility determinations, but rather is limited to deciding whether there are any issues that are both genuine and material. id. at 249.

If the moving party carry it's burden under rule 56, the non-movant must identify "specific facts which demonstrate that there exist a genuine issue for trial." Orson, Inc. V. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996) (citing Celotex Corp. V. Catrett, 477 U.S. 317, 323, 106 S. Ct 2548, 91 L Ed. 2d 265 (1986)). Further, the non moving party cannot rely on unsupported assertions, conclusory allegations or mere suspicions in attempting to survive summary judgement. Williams V. Borough of W. Chester, 891 f.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).

## III. MATERIAL FACTS NOT IN DISPUTE

The undisputed material facts in support of Plaintiff's Motiton for Cross Summary Judgement are set forth in Plaintiff's Concise Statement of Material Facts ("SMF"), and Plaintiff's Declaration In Support of Motion for Cross Summary Judgement ("DSMSJ"), which is being filed

contemporaneously with this motion per Local Rule 56. Plaintiff has also attached an Appendix of Exhibits ("SMF Exhibits"). All of which will be referenced herein for the sake of developing the legal issue. Thus, no further exposition of the facts will be included herein.

## IV. ARGUMENT

### A. Plaintiff'S CLAIM IS PROPERLY EXHAUSTED UNDER THE PLRA

Defendant Long poorly and duplicitously purports that the Plaintiff actions is barred for failing to exhaust his administrative remedies under the Prison litigation Reform Act ("PLRA"). Defendant relies on a laundry list of unsupported assertions, conclusory allegations, mere suspicions, and incontrovertible falsities. See ECF 39 ¶¶ 3-4. Contrary to the postulations of Defendant, Defendant Long is unambigiously identified in Plaintiff's Initial Inmate Grievance ("IIG") No. 804599. Defendant Long acknowledges a scintilla of the truth, "Defendant Long being identified in section 8 of grievance No. 804599". See ECF 39 ¶ 2. However, Defendant Long being implicated in the prelude of Plaintiff's grievance cannot be ignored. It reads as follows:

> This Grievance is for SCI Forest Administration and staff as follows; Superintendent Oberlander, Unit Manager L Best, This Phone Coordinator, C/O Ganary, and SGT Berger, and <u>C/O Long</u>, plus all RHU staff.

Therefore, there can be no doubt about Defendant Long being identified in Plaintiff's initial grievance. See SMF ¶¶ 23; DSMSJ ¶ 9. The Prison Litigation Reform Act provides, in pertinent part, as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available and exhausted." 42 U.S.C. § 1997e(a). Application of this section is mandatory. <u>Porter v. Nussle</u>, 534 U.S. 516 (2002). Exhaustion, for these purposes, requires "proper" exhaustion. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

4

In order to properly exhaust, prisoners must complete the administrative reviews process in accordance with the applicable procedural rules of this prison grievance system. Jones v. Bock, 549 U.S. 199(2007). Prison grievance procedures supply the yardstick for measuring procedural default. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Unexhausted claims may not be considered by the courts. Jones v. Bock, supra.

The DC-ADM 804 Mandates that an inmate must complete three steps in the grievance process in order to properly exhaust administration remedies: 1) filing an Initial Inmate Grievance; 2) Filing an Appeal to the Facility Manager; and 3) Filing an Appeal to the Secretary's Office of Inmate Grievance and Appeals. See Exhibit B § 1.A.11. The level of detail necessary in a grievance to comply with the grievance procedures will vary system to system and claim to claim, but it is prison requirements, and not PLRA, that define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 219 (2007). DC-ADM 804 States;

> Any inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance.

> Any grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim (emphasis added). See Exhibit B § 1(A) (13-14).

Here, Plaintiff's grievance emanated from retaliation. However, the allegation of retaliation is irrelevant in this matter. As, there is no law or policy in place that vitiates Defendant Long from his subsequent involvement which was manifested by his constitutional transgression. Quiet contrary, the delineated policy substantiates Plaintiff's grievance No. 804559 being squarely in line with DC-ADM 804. Thus, being procedurally adequate. See SMF ¶¶ 18, 26.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that

5

he may be sued. William v. Beard, 482 F.3d at 640 (internal citation omitted). But where the inmate does not identify a defendant in the grievance and there is "no indications in the record" that prison administration knew that the defendant was involved in the conduct challenged in the grievance, the prisoner has failed to exhaust administrative remedies. Byrd, 715 F.3d at 127. Id.

As stated herein, it's not in dispute that Defendant Long is explicitly identified in the prelude of grievance No. 804599, as well as section B. Id. With respect to Plaintiff's appeals, Defendant Long is indicatively implied. It reads as follow;

> If this wasn't retaliation, then what was the reason for depriving me property while in the RHU, specifically my religious material?? It's known that I am very attentive to my religion. So by denying me such a significant practice was a devastating blow to me. See Exhibit C "Appeal To Facility Manager/Disignee ¶ 1).

> This was a traumatizing and very painful and emotional event that I suffered. Due to it taking place in RAMADAN a blessed month that I was looking forward to since last year! Further evidence which proves retaliation, is the RHU staff not providing me with any of my religious material or my property during my 13 days in the RHU. Thus infringing upon me exercising my religion. See Exhibit C. "Appeal To Final Review."

Therefore, Plaintiff adequately alerted prison administration of Defendant's violation of his First Amendment right to freely exercise his religion. All of which elucidates Defendant Long being implicated in the record. Byrd, 715, 3d. Id. See SMF ¶¶ 18, 23, 25.

When all of the delineated facts are observed with careful solicitude, there can be no murky about Plaintiff fully complying with DC-ADM 804. As a result, there was a copious amount of evidence in the record for prison administration to conduct an adequate investigation

concerning this matter. Instead of doing so, DOC fostered Long's constitutionally offensive actions. See SMF ¶¶ 32.

For these reasons, Plaintiff has properly exhausted his administrative remedies and summary judgement in favor of the Plaintiff is required.

### B. TOOTLE IS ENTITLED TO SUMMARY JUDGEMENT AS A MATTER OF LAW

At this juncture, Plaintiff sole remaining claim is the First Amendment Free Exercise of Religion. This case is axiomatic insofar Plaintiff can prevail on this claim.

The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." Noble v. Wetzel, 2020 WL 3211893, at *5 (W.D. Pa. May 11, 2020) (quoting Cruz v. Beto, 405 U.S. 319, 322 n. 2, 92 S. Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam)). The First Amendment applies to the states through incorporation by the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L.Ed. 1213 (1940). As a threshold matter for a free exercise claim, the court must determine "whether the prisoner has alleged a belief that is both 'sincerely held and religious in nature." Helsva v. Kramer, 214 Fed. Appx 224, 246 (3d Cir. 2007) (quoting Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (enbanc)). The Court has already acknowledged when discussing the RLUIPA claim that Long concedes that these requirements are met, ECF No.22 p. 3, and the Court agrees based on the Complaint. ECF No. 14 ¶¶ 12, 13. When the Defendant acknowledge that plaintiff's religious belief is sincerely held, and religious in nature, it "follows that [the plaintiff] has a constitutionally protected interest upon which the prison administration may not unreasonably infringe." Dehart, 227 F.3d at 52.

Courts have found that when a prison official confiscate religious material from inmates, this states a plausible free exercise claim under the First Amendment. In Noble v. Wetzel, the court found that the inmate had stated a plausible Free Exercise claim and RLUIPA claim when prison

officials confiscated religious material from him, including books. 2020 WL 3211893, *5 (W.D. Pa. May 11, 2020). The court there denied the motion to dismiss when the denial of religious texts occurred when the plaintiff was in the RHU and even though prison officials had classified his religion as a Security Threat Group (STG)--"a potentially dangerous group." Id. at *2. Tootle also alleges denial of his religious books while in the RHU. See ECF 26, 27 ¶¶ 9-10.

Long argues that denying Tootle his religious texts in the RHU should be upheld because this action was reasonably related to a legitimate penological interest. ECF No. 23, p. 4. Long correctly notes that, under Supreme Court's decision in Turner v. Safely, a prison regulation that "impinges on inmates' constitutional rights" is "valid if it is reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987). A four-part test applies for assessing the overall reasonableness of the regulation: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate or neutral governmental objective; (2) whether prisoners have alternative way of exercising the circumscribed right; (3) "[what] impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether alternatives exist that fully accommodate the prisoner's rights at de minimis cost to valid penological interest. See Turner v. Safely, 482 U.S. at 89-90, 107 S. Ct. 2254 (1987). See ECF 26, 27 ¶ 10. Judge Lanzillo further states;

Here, the record is not "sufficiently developed" to allow the Court to determine whether application of the Turner factors defeats Tootle's claim. While a court may "sometime" be in a position to apply the Turner factors based on the pleading alone, often a "factual record" is necessary to assess whether the regulation or practice is reasonably related to a legitimate penological interest. See Ramirez v. Pugh, 379 F.3d 122, 126-30 (3d Cir. 2004) (reversing grant of a motion to dismiss and remanding for development of the record). See ECF 26, 27 ¶ 10.

Defendant Long correctly notes roughly three pages of legal citations. See ECF 39 ¶ 9-11. However, such citings is void of any factual support, despite the record being "sufficiently developed". Nonetheless Defendant Long ineffectively attempts to meet the four-factor Turner test in one paragraph. It reads as follow;

"Temporarily regulating what items and quantity of items inmates may keep in their cells while in disciplinary custody is of critical penological interest. Plaintiff has failed to provide any evidence that Defendant Long substantially burdened Plaintiff's exercise of religion. In that vein, Plaintiff was free to "pray during Ramadan and was able to fast during Ramadan" as well. Because Plaintiff has not shown that thirteen days in the RHU substantially burdened his freedom to exercise his religion, Defendant Long is entitled to summary judgement on Plaintiff's First Amendment claim." See ECF 39 ¶¶ 11-12.

Such inexorable purports are no less than unsupported assertions, conclusory allegations, and/or mere suspicions in an attempt to be granted summary judgement. Williams v. Borough of Chester, 891 F.2d 458, 460 (3d Cir 1989) (Citing Celotex, 477 U.S. at 325). In that vein, Defendant Long has failed provide any evidence that he in fact, did not substantially burden Plaintiff's religious exercise, nor does he meet the Turner factors that wasn't available during the motion to dismiss. See ECF 26, 27 ¶ 10.

Taking into consideration the stated circumstances, Plaintiff respectfully contends that, this is an [o]ccasion where this Court is in a position to apply the Turner factors based on this pleading alone. Due to the record being "sufficiently developed". See ECF 26, 27, ¶¶ 10. In doing so, Tootle's claim must prevail.

In the case at bar the Plaintiff need not address the facial challenge with respect to the first Turner Prong because the DOC policy is devoid of any regulation prohibiting Disciplinary Custody inmates from having access to their religious literature, unstifiably. See SMF ¶¶

9

17,18,33; DSMSJ ¶¶ 8,14. Therefore, Defendant Long's individual actions are remote from both DOC policy and the United States Constitution. Thus, Long cannot settle the first prong.

<u>(2003 U.S. App. LEXIS 44)</u> The second Turner prong requires "a court to assess whether inmates retain alternative means of exercising the circumscribed rights... When assessing the availability of alternatives the right in question must be viewed "sensibly and expansively". <u>Fraise</u>, 283 F.3d at 518.

Contrary to Defendant's bald assertion "Plaintiff was free to pray during Ramadan and was able to fast during Ramadan". See ECF 39 ¶¶ 11. Plaintiff had no alternatives to exercise his religion, due to him being deprived of the most important book in Islam (the Qur'an), as well as other religious text. Such gall for Plaintiff's right to exercise his religion placed a substantial burden upon the Plaintiff, as maintained in grievance No. 804599, as well is all appeals. See SMF 12,14-16,22,25,30; Exhibit C; DSMSJ 3,5-7, 12,13. The United States Court Of Appeals For The 3rd Circuit held in <u>Sutton v. Rasheed</u>;

Here, while the Plaintiffs had access to the "<u>Bible and Qur'an and could pray in their cells and celebrate Ramadan and other religious holidays</u>", they were deprived of texts which provide critical religious instructions and without which they could not practice <u>(U.S. App. LEXIS 48)</u> there religion generally. 33 in (323 F3d 256).

However, deprivation of the Nation of Islam text in question here implicates not just the right to read those particular texts, but the prisoners ability to practice their religion in general. [T]O illustrate this principal, while we believe that a Christian inmate could practice his religion generally even if prevented from attending Christmas or Easter services, we do not believe he could practice his religion if "<u>deprived of access to the Bible</u>." U.S. App. LEXIS 51. Id.

It must be noted that, Sutton is dealing with the Special Management Unit (SMU) policy. Whereas here, Plaintiff was merely an

17,18,33; DSMSJ ¶¶ 8,14. Therefore, Defendant Long's individual actions are remote from both DOC policy and the United States Constitution. Thus, Long cannot settle the first prong.

<u>(2003 U.S. App. LEXIS 44)</u> The second Turner prong requires "a court to assess whether inmates retain alternative means of exercising the circumscribed rights... When assessing the availability of alternatives the right in question must be viewed "sensibly and expansively". <u>Fraise</u>, 283 F.3d at 518.

Contrary to Defendant's bald assertion "Plaintiff was free to pray during Ramadan and was able to fast during Ramadan". See ECF 39 ¶¶ 11. Plaintiff had no alternatives to exercise his religion, due to him being deprived of the most important book in Islam (the Qur'an), as well as other religious text. Such gall for Plaintiff's right to exercise his religion placed a substantial burden upon the Plaintiff, as maintained in grievance No. 804599, as well is all appeals. See SMF 12,14-16,22,25,30; Exhibit C; DSMSJ 3,5-7, 12,13. The United States Court Of Appeals For The 3rd Circuit held in <u>Sutton v. Rasheed</u>;

Here, while the Plaintiffs had access to the "<u>Bible and Qur'an and could pray in their cells and celebrate Ramadan and other religious holidays</u>", they were deprived of texts which provide critical religious instructions and without which they could not practice <u>(U.S. App. LEXIS 48)</u> there religion generally. 33 in (323 F3d 256).

However, deprivation of the Nation of Islam text in question here implicates not just the right to read those particular texts, but the prisoners ability to practice their religion in general. [T]O illustrate this principal, while we believe that a Christian inmate could practice his religion generally even if prevented from attending Christmas or Easter services, we do not believe he could practice his religion if "<u>deprived of access to the Bible</u>." U.S. App. LEXIS 51. Id.

It must be noted that, Sutton is dealing with the Special Management Unit (SMU) policy. Whereas here, Plaintiff was merely an

Disciplinary Status (DC) inmate. See SMF 11,17,33. Due to Plaintiff not being able to exercise his religion in absence of the Qur'an, it can be concluded that the second Turner factor favor's the Plaintiff. Sutton.

The final two Turner factors also favors the Plaintiff. "The third and fourth factors...focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate. for the guards, for other inmates and for the allocation of prison resources." Dehart, 227 f.3d at 57,37. Here, the consequances of accommodation appears de minimis and would not have a deleterious impact on prison personnel or resources. The Department of Corrections itself obviously did not consider the consequences of accommodation burdensome because their current policy is more efficiently allocated now because the "one box rule" no longer requires individualized decisions about what are "religious texts". See SMF 17. Sutton. Id.

Tellingly, this matter has already been decided in Sutton. However, in this case, the circumstances are severely exasperated, due to the Plaintiff not being able to exercise his religion for roughly half the duration of Ramadan, in absence of his "Qur'an" or other religious text, while Ramdan is called "the month of the Qur'an". See SMF 20,30,33. Thus, being deprived of unenumerated rewards and possibly subjected to an unbearable punishment. See SMF 20-22; Exhibit D. Defendant Long essentially conceeds to confiscating Plaintiff's religious literature. See SMF ¶¶ 16; Exhibit A; DSMS ¶ 5. And for other reasons that this Court can deduce from the overwhelming undisputed facts of this case.

Fundamentally speaking, what's good for the goose, is good for the gander. This case and Sutton, is a "distinction without a difference". Each of the four Turner factors - the existence of a legitimate and neutral government objective with regulations rationally related to the objective; whether there were alternative means of exercising the circumscribed right; the specific religious practice issue; and the consequences of accommodating the inmate - weigh in favor of the Plaintiff's claim. For these reasons, summary judgement is required in favor of the Plaintiff, as the current policy is constitutionally firm

11

under Turner.

## V. CONCLUSION

For the above discussed reasons, Plaintiff Tootle respectfully submits that entry of Summary Judgement on his behalf against Defendant is appropriate as to his remaining claim.

                                        Respectfully Submitted,

                                        /s/Brian Tootle
                                        BRIAN TOOTLE
                                        Pro Se Plaintiff
                                        SCI Forest
                                        P.O. Box 307
                                        Marienville, Pa 16239

Date: June 21, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN TOOTLE, :
        Plaintiff : No. 1:20-cv-0235
        :
    V. : Judge Baxter
        : Magistrate Judge Lanzillo
CORRECTIONAL OFFICER LONG, :
        :
        Defendant :

## CERTIFICATE OF SERVICE

I, Brian Tootle, Pro Se, Plaintiff hereby certify that on June 21, 2022, I caused to be served a true and correct copy of the foregoing document titled "PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT" to the following:

### via U.S. Mail

United States District Court Western District Court
Western District Of Pennsylvania
Richard A. Lanzillo, U.S. Magistrate Judge
17 South Park Row
Erie, PA 16501

                                       By: *Brian Tootle*
                                           BRIAN TOOTLE - LS-1066
                                           Pro Se Plaintiff
Annamarie Truckley                       SCI Forest
Office Of Attorney General            P.O. Box 307
1251 Waterfront Place                  Marienville, PA 16239
Mezzanine Level
Pittsburgh, PA 15222

June 21, 2022